*Related DDT*

FILED
CLERK, U.S. DISTRICT COURT

DEC 3 0 2020

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

1   Chester R. Wiseman
2   California State Prison-LAC
    P.O. Box 8457 CDC*K-65722
    Lancaster, California 93539
3

4   Plaintiff In Sui Juris

5           IN THE UNITED STATES DISTRICT COURT

6        FOR THE CENTRAL DISTRICT OF CALIFORNIA

7   Chester R. Wiseman,              Case No. CV20-11813-RSWL (E)

8           Plaintiff,               PRISONER COMPLAINT FOR
                                     VIOLATION OF CIVIL RIGHTS
9   v.
                                     42 U.S.C. § 1983 (Deliberate
10    . . Williams, (Correctional Lieutenant);   Indifference, ADA, Elder Abuse,
      . . Johnson, Correctional Lieutenant);     Unnecessary Use Of Excessive
11  L. Griffin, Correctional Sergeant);          Force (While In Restraints), Cruel
    B. Morris, Correctional Officer);            and Usual Punishment)
12  R. Hernandez, Correctional Officer);
    F. Almanza, Correctional Officer);   Eighth Amendment
13  Richardson, Correctional Officer);
    A. Hernandez, Correctional Officer);  DEMAND FOR JURY TRIAL
14  O. Romo, Correctional Officer);      (Fed. R. Civ. P. 38 (a))
    Deleo, Correctional Officer);
15  S. White, Correctional Officer);
    D. Lewis Correctional Officer);
16  R. Chirinos Correctional Officer);
    John Doe Correctional Officer);
17
18  In Their Individual Capacity,

19          Defendants.

20      Through this verified Complaint, Plaintiff Chester R. Wiseman
21  alleges the following:

22                      INTRODUCTION

23      This complaint is brought, to redress the ongoing deprivation of
24  rights, secured by the Eighth Amendment to the Constitution for the
25  United states of America. Specifically, as will be plead herein,
26  prison officials at California State Prison Los Angeles County (CSP-LAC),
27  have conspired to intentionally engage in unlawful conduct, that
28  leads to prisoner sustaining serious injuries, which is the norm at

1    CSP-LAC. Prison officials at CSP-LAC have also conspired to cover
2    up the use of unnecessary excessive force, by refusing/failing to
3    file the mandatory incident report package, any time a staff
4    personal alarm is activated and force, whether or not excessive
5    is used. Prison officials further failed/refused to report any
6    excessive unnecessary use of force, despite being a witness to
7    such malfeasance conduct, no staff complaint against the
8    staff member is ever filed, by those staff member who witness
9    the staff misconduct, which in itself, is staff misconduct and
10   violates both state and federal law.

11       Plaintiff, is an elderly sui juris, with disabilities, that
12   provent him from climbing into an upper bunk bed and knee
13   braces for each knee, is mobility impaired and had a medical
14   parement low bunk chrono, that prison officials acknowledged, but
15   intentionally ignored, to assign him to an upper bunk against
16   his will. Plaintiff, immediately informed prison officials, that he
17   had a parement medical lower bunk chrono, when he received his
18   housing assignment, upon arriving to CSP-LAC from California State
19   Prison Corcoran (CSPC). Prison officials instructed for Plaintiff to
20   inform facility C building 2 floor staff and have them call the
21   program sergeant and she would resolve the issue. However, when
22   Plaintiff informed building 2 floor staff of the issue and
23   showed staff his knee braces and explained, that he is prohibited
24   from climbing into an upper bunk, floor staff forced him to
25   be housed in C2-cell# 124 upper. However, while evening
26   day-room was in progress, Plaintiff's cell door opened and
27   he grabed his bag of property and went to where floor staff
28   were standing. Plaintiff, asked whats up with the cell change

1  and pointed to cell#141, which was empty and would also
2  resolve the medical parement lower bunk chrono issue.
3        However, C2 building floor staff instructed for Plaintiff, to
4  return to his assigned cell and see medical staff the next day,
5  about his medical issue or he would receive a disciplinary
6  CDC 115 infraction. Plaintiff, immediately informed staff, that
7  he was physically unable to climb into a top bunk and would
8  not be sleeping in one. Staff instructed for Plaintiff to sleep
9  on the floor, to which Plaintiff, immediately informed floor
10 staff, that he will not sleep on any floor, where his cellmate
11 will have to step over him, to use the restroom during the
12 night and whatever the alternative is, thats what he needed
13 to get to, because he will not be sustaining any injuries, by
14 being forced to sleep in a upper bunk. C2 floor staff had
15 dayroom recalled, at which time Plaintiff took his property to a
16 table in "A section" of the dayroom. After dayroom had been
17 recalled, C2 floor staff came to the table where Plaintiff was
18 sitting and informed him that dayroom was closed and that
19 he needed to return to his assigned cell#124 upper. Plaintiff,
20 informed floor staff, that he will not be sleeping in cell#124 up
21 and whatever the alternative was, thats what they needed to
22 get to. Plaintiff, was instructed to turn around and cuff up,
23 to which Plaintiff, put his hands out in front of himself and
24 explained, that he also has a parement waste chain cuffing
25 medical chrono. While Plaintiff, was being cuffed by floor
26 staff, another prisoner placed a damaged matters on the
27 floor of cell#124, while the door was opened. Prison officials
28 grabed Plaintiff's arms and attempted to force him into cell#124

3

1  against his will and Plaintiff physically objected to being
2  forced into a situation, to which he could sustain possible
3  injuries, knowing his medical condition, and physical
4  limitations.

5     Plaintiff, was taken to the floor by floor staff and
6  staff activated a personal alarm for assistance. Plaintiff,
7  an elderly, disable prisoner, was laying on his left side on
8  dayroom floor, in restraints (handcuffs), not a threat to the
9  safety or security of the prison and not resisting, when
10  several responding officers arrived. One of the responding
11  officers state: cuff him, to which floor staff stated he's cuffed.
12  At that several responding staff, including floor staff grabed
13  Plaintiff, picked him up from the floor and then slammed
14  him back to the floor face down and one of the responding
15  staff, known to assult and batter prisoners, while in restraints,
16  immediately started kicking Plaintiff, in his right side and
17  then punching Plaintiff, with blows to his back, sholders and
18  neck, which were endless and then Plaintiff, left a knee
19  in the center of his back, with precessure, for the sole
20  purpose, of inflicting an unnecessary and wanton infliction
21  of extreme pain and discomfort, while still in restraints,
22  not a threat and not resisting. which is the norm, at
23  CSP-LAC second and third watch.

24     While, Plaintiff, was being assulted and battered by
25  one prison officer, none of the other responding staff
26  even attempted to intervene, to stop the unnecessary use
27  of excessive force, while in restraints, not a threat and
28  not resisting staff, which is also the norm at CSP-LAC.

1    Moreover, to attempt a cover up of the unnecessary
2  use of excessive force, while in restraints, not one of
3  the prison officials, filed the mandatory incident report
4  package, necessary, whenever a staff personal alarm is activated
5  and force is used, whether excessive or not. Furthermore,
6  none of the responding staff or the C2 floor officers
7  filed a staff complaint, against the staff member, that
8  intentionally assaulted and battered Plaintiff, while he was in
9  handcuffs, not a threat, not resisting and already laying
10 on the floor, when responding staff arrived, which is also
11 the norm on facility C at CSP-LAC.
12    To further help in the cover up, prison lieutenants have
13 intentionally failed to adequately investigate staff malfeasance
14 conduct complaints, filed by prisoners, by arbitrary and
15 capriciously, refusing to interview prisoner witnesses and
16 making an erroneous decision, that staff misconduct did
17 not occur and staff did not violate CDCR policy, only
18 to allow the excessive use of unnecessary force to continue
19 and to have another lieutenant, "not the captain," sign off on
20 the erroneous, arbitrary and capricious decision, which is
21 further the norm at CSP-LAC.
22    Moreover, Plaintiff, was never issued any disciplinary
23 CDC 115 rules violation report, for refusing to house in the
24 assigned cell# 124 up, despite being reassigned to cell# 141,
25 after staff malfeasance conduct occurred against him.
26    Plaintiff alleges that: (1) CSP-LAC prison officials acted in
27 intentional callous or reckless indifference to Plaintiff's rights,
28 by intentionally refusing to honor his pavement medical chrono,

5

1  to intentionally house an elderly, disable prisoner, in a top
2  bunk, while acting with deliberate indifference to his
3  health and safty. in violation of federal law and against
4  his will; (2) As a result of Plaintiff, refusing to be housed in
5  an upper bunk, due to his age and disabilities and physical
6  limitations and the fact, that his lower bunk medical
7  chrono was a parement document, prohibiting him from being
8  housed in an upper bunk, that went "ignored" he was unlawfully
9  assulted and battered, by prison staff, while in handcuff, not
10 a threat and not resisting, while laying on the floor.(Elder
11 Abuse and Abuse of Disable Prisoner; (3) Prison officials at CSP-
12 LAC failed/refused to intervene, while Plaintiff was being
13 attacked, assulted and battered, by prison staff, while in
14 restraints, not a threat, not resisting and laying down on
15 the floor face down, which is the norm at CSP-LAC; and also
16 (Elder Abuse and Abuse of the Disable), to only stand by and
17 watch these events occur, but say and do nothing; (4)
18 Prison officials attempted to cover up the unnecessary use of
19 excessive force, while in restraints, by conspiring and refused
20 to file or document, the mandated incident report package,
21 as required by state and federal law, when a personal alarm
22 is intentionally activated and any amount of force is used,
23 whether or not excessive; (5) Prison officials/Responding
24 Staff, intentionally failed/refused to file a staff malfeasance
25 conduct complaint, to intentionally assist in the cover up of
26 unnecessary use of excessive force, while in restraints, not a
27 threat, not resisting and already laying down on the floor face
28 down, as conspired to do, which in itself is also staff

misconduct; and a violation of state and federal law; and
was 'intentional callous or reckless 'indifference to Plaintiff's
rights', deliberate 'indifference to Plaintiff's safety', and
the acts or omissions to cover up staff malfeasance conduct,
did not advance any legitimate penological correctional
goals; (6) After, prison officials attacked, assulted, battered
and 'inflicted 'injuries to Plaintiff's back, sholders, sides and
neck, to 'inflict an unnecessary and wanton 'infliction of
undue pain and discomfort, he was reassigned to cell#141
lower, from cell#124 upper and was never issued a CDC
disciplinary 115 rules violation report, for refusing to be
housed in an upper bunk. The failure to issue a CDC 115
disciplinary report, did not advance any legitimate
penological correctional goals, but only assisted in the
conspircy to cover up staff malfeasance conduct.

Plaintiff seeks monetary compensation, punitive damages,
and 'injunctive relief, since he is still being housed on
facility C, where the events giving rise to this complaint
have taken place and where all of the defendants, that
are named herein are assigned and can easily retaliate
or have their co-workers retaliate against Plaintiff, for exercising
a protected right.

## I.
## JURISDICTION

1.   This action is brought under 48 U.S.C.§1983 and
the Eighth Amendment to the United States Constitution,
Jurisdiction is founded under 28 U.S.C.§1331.

## II.

VENUE

2.   The unlawful actions described herein have taken place in Lancaster, California, within the jurisdiction of the United States District Court for the Central District of California. Thus, venue is proper under 28 U.S.C.§1391 (b).

III.

PARTIES

3.   Chester R. Wiseman, (hereinafter "Plaintiff"), is at all times herein mentioned, a California State Prisoner, an Elderly, Disable Prisoner and is confined at California State Prison Los Angeles County (CSP-LAC), where the events giving rise to this action have taken place.

4.   Johnson, (hereinafter "Defendant Johnson"), is at all times herein mentioned, is employed, by the California Department of Corrections and Rehabilitation (CDCR), as a Correctional Lieutenant, at CSP-LAC, is a Defendant to this action and is being sued in an individual capacity.

5.   Williams, (hereinafter "Defendant Williams"), is at all times herein mentioned, is employed by CDCR, as a Correctional Lieutenant, at CSP-LAC, is a Defendant to this action and is being sued in her individual capacity.

6.   L. Griffin, (hereinafter "Defendant Griffin"), is at all times herein mentioned, employed by CDCR, as a Correctional Sergeant, at CSP-LAC, is a Defendant to this action and is being sued in her individual capacity.

7.   B. Morris, (hereinafter "Defendant Morris"), is at all times herein mentioned, employed by CDCR, as a Correctional Officer, at CSP-LAC, is a Defendant to this action and is

8

1   being sued in his individual capacity.

2       8.   R. Hernandez, (hereinafter "Defendant Hernandez #"1"), is

3   at all times herein mentioned, employed by CDCR, as a

4   Correctional Officer, at CSP-LAC, is a Defendant to this

5   action and is being sued in his individual capacity.

6       9.   F. Almanza, (hereinafter "Defendant Almanza"), is at all

7   times herein mentioned, employed by CDCR, as a Correctional

8   Officer, at CSP-LAC, is a Defendant to this action and is being

9   sued in his individual capacity.

10      10.  Richardson, (hereinafter "Defendant Richardson"), is at all

11  times herein mentioned, employed by CDCR, as a Correctional

12  Officer, at CSP-LAC, is a Defendant to this action and is

13  being sued in an individual capacity.

14      11.  A. Hernandez, (hereinafter "Defendant Hernandez #2"), is at

15  all times herein mentioned, employed by CDCR, as a Correctional

16  Officer, at CSP-LAC, is a Defendant to this action and is

17  being sued in his individual capacity.

18      12.  O. Romo, (hereinafter "Defendant Romo"), is at all

19  times herein mentioned, employed by CDCR, as a Correctional

20  Officer, at CSP-LAC, is a Defendant to this action and

21  is being sued in his individual capacity.

22      13.  Deleo, (hereinafter "Defendant Deleo"), is at all times

23  herein mentioned, employed by CDCR, as a Correctional Officer,

24  at CSP-LAC, is a Defendant to this action and is being

25  sued in his individual capacity.

26      14.  S. White, (hereinafter "Defendant White"), is at all

27  times herein mentioned, employed by CDCR, as a Correctional

28  Officer, at CSP-LAC, is a Defendant to this action and

1  is being sued in his individual capacity.

2  15. D. Lewis, (hereinafter "Defendant Lewis"), is at all times

3  herein mentioned, employed by CDCR, as a Correctional Officer, at

4  CSP-LAC, is a Defendant to this action and is being

5  sued in his individual capacity.

6  16. R. Chirinos, (hereinafter "Defendant Chirinos"), is at all

7  times herein mentioned, employed by CDCR, as a Correctional

8  Officer, at CSP-LAC, is a Defendant to this action and

9  is being sued in his individual capacity.

10  17. John Doe (hereinafter "Defendant Doe") is at all

11  times herein mentioned, employed by CDCR, as a Correctional

12  Officer, at CSP-LAC, is a Defendant to this action and

13  is being sued in his individual capacity.

14  18. At all times herein mentioned, each Defendant

15  named herein, their actions or inactions, were committed

16  while acting under color of state law, to wit, under color

17  of state statutes and CDCR regulations.

18  19. Plaintiff has exhausted all available administrative

19  remedies, prior to filing this complaint to the Court, as

20  required by the Prison Litigation Reform Act (PLRA) of 1995.

21                          IV.

22                  STATEMENT OF FACTS

23  A.          Prison Officials Failed To Honor Elderly Disable
                Prisoner's Pavement Medical Lower Bunk Chrono.
24

25  20. On March 4, 2020, Plaintiff, was transferred from

26  California State Prison Corcoran (CSPC), to California State

27  Prison Los Angeles County (CSP-LAC), in Lancaster, California.

28  21. Plaintiff, was assigned to be housed on Facility "C"

and when he arrived at facility C, with Defendant Griffin and other prisoners, Defendant Griffin, informed the prisoners where they were being housed. Plaintiff, heard Defendant Griffin, say, that he was being housed in building 2, cell# 124 upper and immediately informed Defendant Griffin, that he had a parement medical lower bunk chrono, prohibiting him from being housed in an upper bunk. Defendant Griffin, instructed Plaintiff to have building staff call her, when he got to his housing unit and she will resolve the issue.

22. Upon arrival to building C2, Plaintiff, immediately informed Defendant Morris, that he had a parement lower bunk medical chrono and had been assigned to an upper bunk. Plaintiff, further informed Defendant Morris, that Defendant Griffin, had instructed, that Plaintiff informed floor staff, call her to resolve the bed assignment issue.

23. While grabing a tray to eat and sitting down at a dayroom table in "C section", Defendant Morris, come over to Plaintiff and informed him, that he did not have a lower bunk medical chrono, and informed Plaintiff, that if he did'nt go to his assigned cell# 124 upper, that he would receive a 115 disciplinary rules violation infraction report. Plaintiff finished meal and showed Defendant Morris, that cell# 141 was empty and he could be reassigned to cell# 141 lower, which would resolve the lower bunk medical issue and Plaintiff showed Defendant Morris, that he had knee braces for both knees. Plaintiff, was informed by Defendant Morris, that he would look into it, but Plaintiff, still needed to lock up in cell# 124 for now.

24. Plaintiff, finished his evening meal and grabed his property and went inside of his assigned cell#124, but when he went inside there was no matterss and he did not attempt to climb into the upper bunk, knowing that his limited abilities, would not allow him to physically do so.

B.        Prison Officials Use Of Unnecessary Excessive Force On Disable Elderly ADA Prisoner While In Restraints.

25. On March 4, 2020, while the evening dayroom was in progress, Plaintiff's cell door opened and he grabed his property bag and went to where Defendants Morris and Hernandez #1, were standing. Plaintiff asked Defendant Morris, if the matter regarding a cell reassignment had been resolved? Defendant Morris stated no and Plaintiff informed Defendant Morris, that cell#141 is still empty and that he will not be sleep in cell#124 upper, because he is physically unable to climb into a top bunk, without sustaining possible injuries.

26. Defendant Morris, informed Plaintiff, that he should sleep on the floor and get a cell move the next day. Plaintiff, immediately informed Defendant Morris, that, because of his physical disabilities, he will not even attempt to climb into an upper bunk, along with his age, a 60 year old elderly prisoner. Moreover, because Plaintiff has a parement medical chrono, requiring that he be housed in a lower bunk only, he was not going to be forced, into sleeping in a cell#124, on the floor where his cellmate, who also had a parement low bunk chrono, would have to step over him, to use the restroon during the night, which is disrespectful to both parties. Plaintiff, informed Defendant Morris, that whatever the alternative is, thats what he needed

12

to get to, because he would not be sleeping in cell#124 against his will and without his consent.

27. Defendant Morris, then again informed Plaintiff that if he did'nt return to his assigned cell#124, that he would get a CDC 115 disciplinary rules violation report. Plaintiff again informed Defendant Morris, that whatever the alturnative is, thats what he needed to get to, because he will not be sleeping in his current assigned cell#124 up.

28. Defendant Morris, instructed for Defendant Hernandez #1 to call the control booth and have the dayroom recalled. At that, Plaintiff, picked up his bag of property and went to a table in "A section" of the dayroom and sat down.

29. After the dayroom had been recalled, Defendants Morris, and Hernandez #1, came over to the table where he was sitting and Defendant Morris, informed Plaintiff, that the dayroom has been recalled and that he needed to return to his assigned cell and lock up. Plaintiff reinterated, that cell#141 was still empty and the problem could be resolved by reassigning him from cell#124 upper, to cell#141 lower and if he still needed to see medical, to corroborate his medical low bunk status, the next day, he could do so. Plaintiff, further reinterated, that going to cell#124 was not an option and that whatever the alturnative is, thats what he needed to get at.

30. Defendant Morris, then instructed for Plaintiff, to turn around and cuff up. Plaintiff stood up, with his hands out in front, while explaining, that he had a parement medical waste chain cuffing only chrono. Defendant Hernandez #1, placed the handcuffs on Plaintiff's hands and both Defendants Hernandez #1,

13

and Morris, then grabed Plaintiff by the arms and made an attempt, to physically force Plaintiff into cell #124, where a prisoner had put a damaged matters on the floor of the open cell door. Plaintiff, physically objected, to being forced into a cell #124 upper bunk or being forced to sleep on the floor.

31. Defendants Morris and Hernandez #1, then forced Plaintiff, to the floor, while in restraints (handcuffs) and then Defendant Morris, activated his personal alarm and several other responding staff arrived, while Plaintiff was laying on the floor, not a threat to the safety or security of the prison and not resisting, and still in restraints.

32. Defendant Chirinos, saw Plaintiff laying on the floor with his hands out in front of him and then stated cuff him, to which Defendant Morris, stated he's cuffed. At that, several of the responding officers, all Defendants named herein, including Defendants Morris, Hernandez #1, Almanza, Deleo, Romo, Lewis, White, Hernandez #2 and Richardson, all grabed Plaintiff, picked him up from the floor and then slammed him back onto the floor face down, despite not resisting and not a threat and still in restraints. John Doe assisted.

33. After Plaintiff, had been slammed to the floor by the responding Defendants, Defendant Chirinos, immediately started kicking Plaintiff, in his right side, while face down, laying on the floor and then started punching him, with blows to his sholders, back and neck. To further inflict an unnecessary and wanton infliction of pain and discomfort, Defendant Chirinos, placed his knee into the center of Plaintiff's back and intentionally applied pressure,

14

1  downward into Plaintiff's back, for the sole purpose of
2  inflicting undue, extreme, unnecessary and wanton intentional
3  infliction of pain and discomfort, upon Plaintiff, while in
4  restraints, not resisting and not a threat.

5      34. It was not until Defendant Griffin, arrived to C2,
6  that Defendant Chirinos, stopped assulting and battering
7  Plaintiff, when Defendant Griffin ordered responding
8  Defendants, to stand Plaintiff up, that Defendant Chirinos
9  stopped assulting and battering Plaintiff and got off of his
10  back,

11  C.       Prison Officials Failed/Refused To Intervene
12  While Plaintiff Was Being Assulted And Battered While
    In Restraints Due To Use Of Unnecessary Excessive Force.

13      35. On March 4, 2020, while Plaintiff, was being attacked,
14  assulted and battered, by Defendant Chirinos, for the sole
15  purpose of inflicting, an unnecessary and wanton infliction
16  of pain, upon Plaintiff, an elderly, disable, ADA prisoner,
17  none of the responding Defendants or building floor staff,
18  Defendants Morris and Hernandez*1, intervened to stop
19  the elderly abuse, upon a disable prisoner and the undue
20  use of unnecessary excessive force, while in restraints,
21  laying on the floor, helpless, not a threat and not resisting.

22      36. Defendants Morris, Hernandez*1, Almanza, Richardson,
23  Hernandez*2, Romo, Deleo, White, Lewis and John Doe all
24  stood by and only watched and said nothing at all, to
25  Defendant Chirinos, while Plaintiff, was being attacked,
26  assulted and battered, while in restraints (Chandcuffs),
27  not a threat, not resisting and helpless, laying on the
28  floor in pain, due to use of unnecessary excessive force.

15

1  despite having a sworn duty and legal obligation, to
2  intervene and stop the use of unnecessary excessive
3  force, on an elderly, disable, ADA prisoner in restraints,
4  not a threat and not resisting staff, each and every
5  above named Defendant, intentionally ignored their
6  oath, sworn duty and lawful obligation owed to
7  Plaintiff, was intentional callous or reckless indifference
8  to Plaintiff's rights and intentional violation of
9  federal law and did not advance any penological
10 legitimate correctional goals.

11 D.         Prison Officials Conspired To Cover Up The
            Unnecessary Use Of Excessive Force While In Handcuffs,
12          Not Resisting, Not A Threat, Elderly, Disabled Prisoner.

13        37. On March 4, 2020, Defendant Griffin, a superior
14 officer, arrived at building C2, while Defendant Chirinos,
15 was on Plaintiff's back, with a knee in the center of
16 Plaintiff's back applying pressure. Defendant Griffin,
17 order for Plaintiff to be stood up on his feet, at which
18 time Defendant Chirinos, stopped and got off of his
19 back and several other Defendants grabed Plaintiff and
20 stood him up on his feet. Defendant Griffin, then
21 ordered that Plaintiff be escorted to the Gym, where he
22 was placed in a holding cage, unhandcuffed, searched
23 and released to return back to building C2, where his
24 property had now been placed, in the cell that was
25 empty cell #141. (Lower Bunk).

26       38. Defendant Griffin, a superior officer and all of
27 the responding and building C2 floor Defendants, each
28 intentionally, conspired to cover up the unnecessary use of

16

1  excessive force, on an elderly, disabled, ADA prisoner, by
2  failing to file a mandatory incident report package,
3  "necessary documentation," whenever a personal staff alarm
4  is activated and any amount of force is used, whether
5  excessive or otherwise. These unlawful actions or inactions
6  were intentional callous or reckless indifference to
7  Plaintiff's rights, did not advance any legitimate
8  penological correctional goals and were intentional
9  violations of federal law, and is the norm at CSP-LAC.
10      39. To further cover up the unlawful use of excessive
11  unnecessary force, Defendants Griffin, Norris, Hernandez #1,
12  Almanza, Richardson, Hernandez #2, Romo, Deleo, White,
13  Chirinos, Lewis and John Doe each intentionally
14  failed/refused to file the mandated staff malfeasance
15  conduct complaint, against Defendant Chirinos, despite
16  being required to do so, by state and federal law, each
17  above named Defendant, ignored state and federal law,
18  to continue the conspircy and allow the unnecessary
19  use of excessive force, on elderly, disable, ADA prisoners,
20  while in restraints, not a threat, not resisting and also
21  laying on the floor, helpless, to continue.
22      40. Moreover, during the inmate appeal process,
23  Defendant Williams, "a superior officer," conducted an
24  arbitrary and capricious, inadequate investigation,
25  to assist in the conspired cover up, by refusing to
26  interview "any of the prisoner witnesses," that saw
27  the unnecessary use of excessive force, upon Plaintiff,
28  an elderly, disable, ADA prisoner, while in restraints,

1  not a threat and not resisting Defendants. Defendant
2  Williams, further came to the erroneous conclusion,
3  that staff misconduct did not occur and Defendant
4  Chirinos, did not violate any CDCR policy, which
5  was based soley on the interviews of a few of the
6  Defendants involved in the conspiracy to cover up
7  the unnecessary use of excessive force, while in
8  restraints, that they had first hand knowledge of
9  and had witnessed, the violation of federal law.

10    41. To further assist in the conspired cover up,
11  Defendant Williams, had Defendant Johnson, to
12  sign off on her arbitrary, capricious and erroneous
13  decision, that no staff misconduct occurred and
14  Defendant Chirinos, did not violate CDCR policy,
15  when he attacked, assulted and battered, an elderly,
16  disable, ADA Plaintiff, while in restraints, laying on the
17  floor, not a threat, not resisting and helpless in pain.

18    42. While the signing off on a staff misconduct
19  complaint (602 Appeal), requires that a higher ranking
20  officer, such as a facility captain, Defendant
21  Williams and Defendant Johnson, have the same rank
22  of Correctional Lieutenant. This is the norm at CSP-LAC.
23  The facility Captain never signed off on the arbitrary
24  and capricious, erroneous decision, by Defendant Williams.

25    43. Moreover, a prisoner that witnessed the unnecessary
26  use of excessive force, while in restraints, sent a declaration
27  of the unlawful incident to: Rosen Bien, Galvan & Grunfeld
28  Michael W. Bien attorneys at law; Raybon Johnson Wardens

1 Office at CSP-LAC; Internal Affairs; and California State
2 Auditor.   Lee Payton CDC# BO-4173 and Walley Patterson
3 CDC# P-1557B, along with several other prisoners, who
4 witnessed the unnecessary use of excessive force on an
5 elderly, disable, CCCMS mental patient (Plaintiff), while
6 in restraints, were intentionally never interviewed, by
7 any CDCR prison officials, which is the norm at CSP-
8 LAC, to assist in the cover up of any staff misconduct.
9      44. On or about April 27, 2020, Plaintiff provided
10 a declaration via telephone, to Rosen Bien, Galvan &
11 Grunfeld LLP, Michael W. Bien attorneys at law, of the
12 unlawful use of unnecessary excessive force, while in
13 restraints, an elderly, disable, ADA, CCCMS class member,
14 laying on the floor, helpless, not a threat and not
15 resisting; but being forced to suffer, an undue infliction
16 of an unnecessary and wanton infliction of pain
17 and discomfort, without any lawful cause; inflicted
18 by Defendant Chirinos, to cause cruel and unusual
19 punishment. at CSP-LAC.
20 E.          Prison Officials Failure To File A Staff
21    Misconduct Complaint Against Defendant Chirinos.
22      45. On or after March 4, 2020, Defendants Griffin,
23 Morris, Hernandez #1, Almanza, Richardson, Hernandez #2,
24 Romo, Deleo, White, Lewis and John Doe  all failed/
25 refused, to file a staff misconduct complaint, against
26 Defendant Chirinos; which is the norm at CSP-LAC
27 and is one of the reasons, why (10) years later, when
28 Plaintiff witnessed Defendant Chirinos, attack, assult

1                  V.

2           CAUSE OF ACTION

3         FIRST CAUSE OF ACTION

4     (Eighth Amendment–Deliberate Indifference)

5    48. PLAINTIFF, incorporates paragraphs 1 through 24, as

6 though fully set forth herein at length.

7    49. Upon information and belief, Plaintiff alleges,

8 that the intentional actions or inactions of Defendant Griffin,

9 and Defendant Morris, to intentionally ignore Plaintiff's

10 age, disabilities and parament, medical lower bunk

11 only chrono, to be deliberately indifferent to Plaintiff's

12 health, was intentional callous or reckless indifference

13 to Plaintiff's rights, did not advance any legitimate

14 penological correctional goals and was an intentional

15 violation of federal law.

16         SECOND CAUSE OF ACTION

17     (Eighth Amendment–Unnecessary Use Of Excessive

18    Force Upon Elderly Disable Prisoner While In Restraints)

19    50. PLAINTIFF, incorporates paragraphs 1 through 34, as

20 though fully set forth herein at length.

21    51. Upon information and belief, Plaintiff alleges,

22 that the intentional actions or inactions of Defendants

23 Morris, Hernandez #1, Almanza, Richardson, Hernandez #2,

24 Romo, Deleo, White, Lewis and Doe     to slam the

25 Plaintiff onto the floor face down, while in restraints, as

26 opposed to turning him over from his left side, to be face

27 down; and to further allow Defendant Chirinos, to also

28 attack, assult and batter, Plaintiff, an elderly, disable, ADA

1  prisoner, that is a CCCMS mental patient as well; did not
2  advance any legitimate penological correctional goals;
3  was intentional callous or reckless indifference to
4  Plaintiff's rights; is the norm at CSP-LAC and was also
5  an intentional violation of federal law, by intentionally
6  failing or refusing to intervene, while staff misconduct occurs,
7  while Plaintiff was helpless, laying on the floor, in restraints,
8  not a threat and not resisting the Defendants.

9                    THIRD CAUSE OF ACTION
10      (Eighth Amendment-Deliberate Indifference-Use Of
11      Unnecessary Force In Failing To Intervene To Stop
        The Unnecessary Use Of Excessive Force While In Restraints)

12     52. PLAINTIFF, incorporates paragraphs 1 through 36, as
13  though fully set forth herein at length.

14     53. Upon information and belief, Plaintiff alleges,
15  that the intentional actions or inactions of Defendants
16  Morris, Hernandez #1, Almanza, Richardson, Hernandez #2,
17  Romo, Deleo, White, Lewis and Doe    to refuse and
18  fail to intervene, while the unnecessary use of excessive
19  force, on an elderly, disable, CCCMS prisoner, in restraints,
20  laying down on the floor, helpless, not a threat and not
21  resisting occurred; was intentional callous or reckless
22  indifference to Plaintiff's rights; did not advance any
23  legitimate penological correctional goals; despite the
24  maliciously and sadistically use of force to cause harm,
25  the failure/refusal to intervene, was an intentional
26  violation of state and federal law.

27                    FOURTH CAUSE OF ACTION
28          (Eighth Amendment-Deliberate Indifference-

                            22

1    Conspiracy To Cover Up (Unnecessary Use of
2    Excessive Force While In Restraints)

3    54. PLAINTIFF, incorporates paragraphs 1 through 44, as
4    though fully set forth herein at length.

5    55. Upon information and belief, Plaintiff alleges,
6    that the actions or inactions of Defendants Williams,
7    Johnson, Griffin, Morris, Hernandez #1, Almanza, Richardson,
8    Hernandez #2, Romo, Deleo, White, Lewis and Doe
9    to intentionally conspire, to cover up, the maliciously and
10   sadistically, unnecessary use of excessive force, upon an
11   elderly, disable, CCCMS patient, while in restraints, not
12   resisting, not a threat, laying on the floor and helpless;
13   was intentional deliberate indifference to Plaintiff's
14   health and safety; an intentional callous or reckless
15   indifference to Plaintiff's rights; did not advance
16   any legitimate penological correctional goals; and was
17   an intentional violation of federal law.

18                    FIFTH CAUSE OF ACTION
19   (Eighth Amendment – Deliberate Indifference In
20   Failing To File A Staff Misconduct Complaint To
     Allow Staff Misconduct To Continue)

21   56. PLAINTIFF, incorporates paragraphs 1 through 45, as
22   though fully set forth herein at length.

23   57. Upon information and belief, Plaintiff alleges,
24   that the intentional actions or inactions of Defendants
25   Morris, Hernandez #1, Almanza, Richardson, Hernandez #2, Romo,
26   Deleo, White, Lewis and Doe      to fail/refuse to file
27   a Staff Complaint, against Defendant Chirinos, for the
28   maliciously and sadistically, unnecessary use of excessive

                              23

force, upon an elderly, disable, CCCMS patient, in restraints,
not a threat, not resisting, laying on the floor and helpless;
was deliberate indifference; intentional callous or reckless
indifference, to Plaintiff's rights; did not advance any
legitimate penological correctional goals; and intentional
violation of federal law, requiring that all forms of
staff malfeasance conduct be reported and failing to do
so, itself constitutes staff misconduct.

SIXTH CAUSE OF ACTION

(Eighth Amendment- Deliberate Indifference In
Failing To File A CDC Disciplinary 115 Report)

58. PLAINTIFF, incorporates paragraphs 1 through 57, as
though fully set forth herein at length.

59. Upon information and belief, Plaintiff alleges,
that the unlawful intentional actions or inactions of
Defendants Morris, Hernandez #1 and Griffin, to not
file a CDC 115 disciplinary rules violation infraction
report, against Plaintiff, to prevent explaining why
a disable, elderly, CCCMS patient, with a parement
medical lower bunk only chrono, had not been reassigned
at the descretion of Defendant Griffin; prior to him
being unnecessarily attacked, assulted and battered, by
Defendant Chirinos; that has a lengthy history of
assulting and battering prisoners in restraints; that
Plaintiff became aware of in December 2010, when he
was housed on facility C and witnessed Defendant
Chirinos, assult and batter, a prisoner on the yard.
The failure/refusal to file a disciplinary infraction

24.

1  CDC 115 rules violation report, was intentional callous
2  or reckless indifference to Plaintiff's rights; did not
3  advance any legitimate penological correctional goals;
4  shows a willingness to disregard CDCR regulations;
5  and intentional violation of state and federal law.

6                           VI.
7                REQUEST FOR RELIEF
8      WHEREFORE, Plaintiff requests the following relief:
9      1.   Grant Plaintiff a Declaration that the actions or
10  inactions described herein violate the Constitution and
11  laws of the United States of America.
12     2.   Grant Plaintiff injunctive relief compelling the
13  performance of the following acts:
14          a.   Provide Plaintiff at least (10) ten feet of space
15               between Plaintiff and all named Defendants herein.
16          b.   Avoid any and all attempts to retaliate against
17               Plaintiff and having co-workers retaliate against
                 Plaintiff for exercising a protected right.
18          c.   Avoid any and all attempts of setting up or
                 having co-workers to set Plaintiff up to cause
19               him to miss his 9-1-2021 max release date.
20     3.   Grant Plaintiff compensatory damages against
21  Defendants Williams, Johnson and Griffin, in the
22  amount of $75.000. according to proof.
23     4.   Grant Plaintiff compensatory damages against
24  Defendant Chirinos, in the amount of $100.000.
25  according to proof.
26     5.   Grant Plaintiff compensatory damages against
27  Defendants Morris, Hernandez #1, Almanza, Richardson,
28  Hernandez #2, Romo, Deleo, White, Lewis and Doe

                          25

1   in the amount of $75,000, according to proof.

2      6. Grant Plaintiff punitive damages against
3   Defendants Williams, Johnson and Griffin, in the
4   amount of $150,000, each according to proof.

5      7. Grant Plaintiff punitive damages against
6   Defendant Chirinos, in the amount of $200,000, according
7   to proof.

8      8. Grant Plaintiff punitive damages against
9   Defendants Morris, Hernandez*1, Almanza, Richardson,
10  Hernandez*2, Romo, Deleo, White, Lewis and
11  in the amount of $150,000, each according to proof.

12     9. Grant Plaintiff nominal damages against
13  Defendants Williams, Johnson, Griffin, Morris,
14  Hernandez*1, Almanza, Richardson, Hernandez*2,
15  Romo, Deleo, White, Lewis and John Doe    in the
16  amount of $1.00, each according to proof.

17     10. Grant Plaintiff a change in CDCR policy, that
18  has allowed the unlawful conduct alleged herein, to
19  continue for years and go unreported by CDCR
20  prison officials, to allow the unnecessary use of
21  excessive force, while in restraints, to continue to
22  go unreported by prison officials, without any form
23  disciplinary actions being taken against staff.

24     11. Grant Plaintiff all costs incurred by this
25  lawsuit, including, but not limited to attorney fees.

26     12. Grant Plaintiff any further relief deemed to
27  be equitable by this Court and appropriate in the
28  true interest of justice under the laws.

/S/ *Chester R. Wiseman*
Chester R. Wiseman
Plaintiff In Sui Juris

## VII.

## VERIFICATION

I Chester R. Wiseman, am the Plaintiff to this action. I have read the foregoing Complaint and know its contents. The same is true of my own personal knowledge, except as to matters alleged on information and belief and as to them, I believe them to be true.

I declare under penalty of perjury, according to the laws of the United states of America, that the foregoing is true correct and not meant to be misleading. Executed on this 23rd day of December 2020 at Lancaster, California.

/S/ *Chester R. Wiseman*
Chester R. Wiseman

Observation of Occurrence at CSP-Los Angeles County
Facility C Re-Entry Hub Complex

Date: 3 March 14 , 2020

To  : The Warden/Chief Executive Officer

On the date of: March 4 , 2020 , at approximately 8:30pm hours, I
personally observed the following occurrence transpire. I report this to
ensure you are aware of the events as they transpired from the view of the
Inmate population. My sole intent is to ensure the truth is revealed and
not some sham reporting by those involved in the occurrence or those who(m)
witnessed the incident and failed to report misconduct. Too many acts of
excessive force or unnecessary use of force have been deployed, and/or the
failure to exercise better restraint by de-escalating rather provoking any
body to respond in a negative manner or what could be perceived as conduct
that could lead to violence.  I have not expressed any opinion, only what I
personally witnessed.

FACTS OF WHAT I PERSONALLY WITNESSED/OBSERVED

DECLARATION OF Wally Patterson:
  I Wally Patterson declare affirm state and assert that:
  1. I am currently confined at California State Prison Los Angeles
County (CSP-LAC). My prisoner identification number is #P-23096 I have
personal knowledge of the events decribed herein and could provide competent
testimony about them if called upon to do so.
  2. On March 4 2020, several prisoners arrived from R&R to be housed
on facility C building 2. From inside my cell #135 I could see and hear a
prisoner that had arrived talking to floor officer B. Morris about having a
pavement lower bunk chrono and being assigned to an upper bunk in cell #124.
Chester Wiseman the prisoner speaking to officer B. Morris was sitting at a
day room table eating when officer B. Morris walked over and told Mr. Wiseman
that he did not have a bottom bunk chrono and would have to go to the cell he
was assigned too or he would get a CDC disciplinary 115 for refusing to house in
his assigned cell #124 upper. Mr. Wiseman showed officer B. M . 15 that he
had knee braces for both knees and that cell #141 was empty. Officer
Morris looked at cell #141, but only reinterated that if Mr. Wiseman did not go
to his assigned cell #124 that he would receive a CDC 115. Mr. Wiseman picked
up his property and took it to cell #124 and went inside.
  3. Dayroom was released later and Mr. Wiseman remained in his cell,
waiting to talk to officer B. Morris about a cell change to cell #141. Mr. Wiseman
standing at his door, when it opened during the evening dayroom and he came
out with his bag of property and went to where floor staff officers B. Morris
and R. Hernandez were standing. Shortly thereafter dayroom was recalled and
Mr. Wiseman took his property to a table in (A section) of the dayroom and sat
down.
  4. After dayroom recall, as I went back to my cell #135, I heard officer
Morris tell Mr. Wiseman, an ADA, elderly prisoner, that dayroom had been recalled
and he needed to go lock up in his assigned cell or he would get a CDC 115 for
refusing to lock up. Mr. Wiseman explained that he has a pavement low bunk
medical chrono and would not be sleeping in a top bunk under any circumstances
and the problem could be resolved by reassigning him to cell #141 where no one
was assigned to. Officer told Mr. Wiseman to sleep on the floor and he

1 of 3

Correspondence to the CSP-Los Angeles County Warden's Office   Page: 2 of 3
Date: March 14 ___, 2020

## FACTS OF WHAT I OBSERVED (CONTINUED)

told officer Morris that he will not be sleeping on any floor when there was an empty cell #141. Officer B. Morris told Mr. Wiseman to turn around and cuff up. Mr. Wiseman told officer Morris that he also had a waste chain chrono and officer R. Hernandez cuffed him in front.

5. Officer Morris and R. Hernandez grabbed Mr. Wiseman under his arms and attempted to force Mr. Wiseman into cell #124 and he refused to be forced into cell #124 and officers B. Morris and R. Hernandez forced him to the floor. A personal alarm was activated and while Mr. Wiseman was in restraints, not a threat and not resisting, other officers arrived. Officers R. Chirinos, O. Romo, R. Hernandez, A. Hernandez, Richardson, F. Almanza, Deleo, S. White, D. Lewis, and B. Morris were all present and picked Mr. Wiseman up off the floor and then slammed him back to the floor face down. Immediately officer R. Chirinos started kicking Mr. Wiseman in his right side and punching him in his shoulders back and neck, and then put his knee in Mr. Wiseman's back, while he was an ADA, elderly, not resisting and not a threat, and while still in handcuffs.

6. While officer R. Chirinos was assulting and battering Mr. Wiseman, not one of the above named officers intervened to stop the unnecessary use of excessive force by officer R. Chirinos and none of the officers filed an incident report of the incident, or staff complaint against officer R. Chirinos, for the use of unnecessary excessive force while in restraints. The officers also did not file a disciplinary CDC 115 report against Mr. Wiseman also in an attempt to cover up the officers own misconduct.

7. At no time after I witnessed the above described events, was I ever interviewed by CDCR prison staff about the unnecessary use of excessive force while Mr. Wiseman was in restraints, not resisting, not a threat and already laying on the floor when additional staff arrived.

I declare under penalty of perjury, according to the laws of the united States of America, that the foregoing is true correct and not meant to mislead. Signature is attached on page 3 of 3

Correspondence to the CSP-Los Angeles County Warden's Office    Page: 3  of 3

Date: March 14   , 2020

In conclusion,

I request the following actions be taken:
1. The matter be investigated and appropriate adverse action be taken;
2. That the Captain be personally made aware of the report and he ensure that I am not subject to any forms of reprisal by any of the staff, nor by indirect means such as tactical searches to create or cause a false impression that I turned on them while being searched, or by engaging in retaliatory cell inspections.

Respectfully submitted,

/s/: _____        Printed Name: Walley Patterson Sr.

cc: Ombudsman's Office
    Inspector General's Office
    CDCR Secretary's Office

Observation of Occurrence at CSP-Los Angeles County
Facility C Re-Entry Hub Complex

Date: May 22 , 2020

To : The Warden/Chief Executive Officer

On the date of: March 4 , 2020 , at approximately 8:30pm hours, I personally observed the following occurrence transpire. I report this to ensure you are aware of the events as they transpired from the view of the Inmate population. My sole intent is to ensure the truth is revealed and not some sham reporting by those involved in the occurrence or those who(m) witnessed the incident and failed to report misconduct. Too many acts of excessive force or unnecessary use of force have been deployed, and/or the failure to exercise better restraint by de-escalating rather provoking any body to respond in a negative manner or what could be perceived as conduct that could lead to violence.  I have not expressed any opinion, only what I personally witnessed.

FACTS OF WHAT I PERSONALLY WITNESSED/OBSERVED

DECLARATION OF Kevin Angelo Simmons:

I Kevin Angelo Simmons, declare, affirm, state and assert that:

1.   I am currently confined at California State Prison Los Angeles County (CSP-LAC). My prisoner identification number is P-23096. I have personal knowledge of the events described herein and could provide competent testimony about them if called upon to do so.

2.   On March 4, 2020, prisoner Chester Wiseman arrived to facility C, building 2, and was assigned to my cell #124 upper. I have a pavement bottom bunk medical chrono. Mr. Wiseman let officer B. Morris, know that he had a pavement bottom bunk medical chrono and could not be housed in an upper bunk. Officer B. Morris informed Mr. Wiseman that he would look into it. Mr. Wiseman brought his property into the cell #124 and told me that he had a pavement low bunk medical chrono and was assigned to an upper bunk, despite being disable, elderly and having knee braces for each knee.

3.   Dayroom was released and Mr. Wiseman remained in the cell waiting to see if he was going to be reassigned to cell #141, which was empty at that time. While dayroom was in progress my cell door opened and Mr. Wiseman out with his bag of property and went to where officer B. Morris and R. Hernandez were standing. Shortly thereafter, officer R. Hernandez had the dayroom recalled and I went back to my cell #124 and saw Mr. Wiseman go to a table in A section of the dayroom and sit down.

4.   While in my cell #124 and standing at the door looking out I saw officer B. Morris and R. Hernandez, go to the table where Mr. Wiseman was sitting. As I was at the door I heard officer Morris tell Mr. Wiseman to lock up because dayroom has been recalled. I heard Mr. Wiseman say that he has a pavement lower bunk medical chrono and will not attempt to get into a upper bunk, knowing that he could sustain possible injuries. B. Morris then told Mr. Wiseman to sleep on the floor. Mr. Wiseman explained that he will not be sleeping on the floor, where his cellmate would have to step over him during the night to use the restroom and moreover, cell #141 is empty and he could be reassigned there, which would resolve the problem. My cell door opened and another prisoner brought a damaged matteress to the cell #124 and put it on the floor of the cell.

5.   As Mr. Wiseman was sitting at a table, I heard officer B. Morris,

1 of 3

Correspondence to the CSP-Los Angeles County Warden's Office  Page: 2 of 3
Date: May 22 , 2020

## FACTS OF WHAT I OBSERVED (CONTINUED)

say to Mr. Wiseman, that if he didn't lock up now he would receive a CDC 115 for refusing to house in his assigned cell. I heard Mr. Wiseman say whatever the alturnative is thats what he needed to get to, because he will not be sleeping in cell#124. Officer Morris stated that he should sleep in there for the night and he could see medical the next day to get a lower bunk. Mr. Wiseman again stated that whatever the alturnative is thats what he needed to get to, because he will not sleep in cell#124, when cell#141 is empty and would meet his medical needs. Officer Morris, told Mr. Wiseman, to turn around and cuff up and Mr. Wiseman put his hands out in front and explained that he has a parement waste chain cuffing medical chrono and officer R. Hernander placed Mr. Wiseman in handcuffs.

6.  Officer B. Morris and R. Hernandez, then grabed Mr. Wiseman by the arms and attempted to force Mr. Wiseman into cell#124 against his will and without his consent, to which Mr. Wiseman physically objected and officer Morris and R. Hernandez forced him to the floor and B. Morris activated his personal staff alarm.

7  While Mr. Wiseman, was laying down on his left side on the floor in restraints (handcuffs), not resisting and not a threat, several responding officers arrived. Officer R. Chirinos stated cuff him and officer Morris stated he's cuffed. At that several officer, including B. Morris and R. Hernandez grabed Mr. Wiseman, picked him up from the floor and immediately slammed him back down onto the floor face down. Officer R. Chirinos immediately without cause and acting in bad faith, started kicking Mr. Wiseman in his right side and then punching him with blows to his sholders, neck and back, and then R. Chirinos climbed onto Mr. Wiseman's back and placed his left knee and started pushing down with his knee into Mr. Wiseman's back.

8.  While officer R. Chirinos, was attacking, assulting and battering Mr. Wiseman, while in restraints, not a threat, an elderly, disable prisoner not resisting and helpless, not one of the responding officers, including B. Morris and R. Hernandez floor staff, intervened to stop the unnecessary use of excessive force against Mr. Wiseman, while he was in handcuffs and helpless, which is the norm at CSP-LAC when it comes to prison officials assulting prisoner while in restraints.

9.  At no time after this event described herein, was I ever interviewed by any CDCR officials investigating the staff misconduct complaint filed against officer R. Chirinos, for the unnecessary use of excessive force while in restraints, that I personally witnessed occur, along with several other prisoners that were also never interviewed by prison officials, which is also the norm here at CSP-LAC.

I declare under penalty of perjury, according to the laws of the laws of the united States of America, that the foregoing is true and correct and not meant to mislead. Signature is on attached page 3 of 3.

Correspondence to the CSP-Los Angeles County Warden's Office    Page: 3  of 3

Date: May 22 , 2020

In conclusion,

I request the following actions be taken:
1.  The matter be investigated and appropriate adverse action be taken;
2.  That the Captain be personally made aware of the report and he ensure that I am not subject to any forms of reprisal by any of the staff, nor by indirect means such as tactical searches to create or cause a false impression that I turned on them while being searched, or by engaging in retaliatory cell inspections.

Respectfully submitted,

/s/: *Kevin Angelo Simmons*            Printed Name: **Kevin Angelo Simmons**

cc: Ombudsman's Office
    Inspector General's Office
    CDCR Secretary's Office

# EXHIBIT A

## INMATE APPEAL ASSIGNMENT NOTICE

To: INMATE  WISEMAN, K65722                    Date: March 19, 2020
Current Housing:  C  002 1141001L

From:  INMATE APPEALS OFFICE

Re: APPEAL LOG NUMBER:  LAC-C-20-01495

ASSIGNED STAFF REVIEWER:  STAFF COMPLAINT LT.'S
APPEAL ISSUE:  GRIEVANCE AGST STAFF
DUE DATE:  04/30/2020

Inmate WISEMAN, this acts as a notice to you that your appeal has been sent to the
above staff for SECOND level response.  If you have any questions, contact the above
staff member. If dissatisfied, you have 30 days from the receipt of the response to
forward your appeal for THIRD level review.  Third level appeals are to be mailed
directly to:

> Chief of Inmate Appeals
> Department of Corrections
> P. O. Box 942883
> Sacramento, CA  94283-0001


☐  K. Estrada, AGPA
☐  G. Stratman
☐  B. Legier, Staff Complaint LT
☐  M. Fordham, CCII AC
☐  A. Ojeda, CCII AC
Appeals Coordinator
LAC

# EXHIBIT B

STATE OF CALIFORNIA
**INMATE/PAROLEE REQUEST FOR INTERVIEW, ITEM OR SERVICE**
CDCR 22 (10/09)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

## SECTION A: INMATE/PAROLEE REQUEST

| NAME (Print)     (LAST NAME) | (FIRST NAME) | CDC NUMBER: | SIGNATURE: |
|---|---|---|---|
| Wiseman | Chester | K-65722 | Chester Wiseman |

| HOUSING/BED NUMBER: | ASSIGNMENT: | HOURS FROM_____ TO_____ | TOPIC (I.E. MAIL, CONDITION OF CONFINEMENT/PAROLE, ETC.): |
|---|---|---|---|
| C2-141 | N/A | | Status of Overdue 602 |

CLEARLY STATE THE SERVICE OR ITEM REQUESTED OR REASON FOR INTERVIEW:

I am requesting the status of my staff complaint # CAL-C-20-01495 mailed to the Chief Appeals Coordinator in June 2020. To date I have received no response from the Third Level Review thus depriving me due process and access to the courts.

METHOD OF DELIVERY (CHECK APPROPRIATE BOX ) **\*\*NO RECEIPT WILL BE PROVIDED IF REQUEST IS MAILED \*\***

☐ SENT THROUGH MAIL:  ADDRESSED TO:_____  DATE MAILED: 11/18/2020

☐ DELIVERED TO STAFF (STAFF TO COMPLETE BOX BELOW AND GIVE GOLDENROD COPY TO INMATE/PAROLEE):

| RECEIVED BY: PRINT STAFF NAME: | DATE: | SIGNATURE: | FORWARDED TO ANOTHER STAFF? |
|---|---|---|---|
| G. MAPRA | 11-18-20 | | (CIRCLE ONE)   YES   NO |

| IF FORWARDED – TO WHOM: | DATE DELIVERED/MAILED: | METHOD OF DELIVERY: |
|---|---|---|
| Chief Appeals Coordinator | | (CIRCLE ONE)   IN PERSON   BY US MAIL |

## SECTION B: STAFF RESPONSE

| RESPONDING STAFF NAME: | DATE: | SIGNATURE: | DATE RETURNED: |
|---|---|---|---|
| | | | |

## SECTION C: REQUEST FOR SUPERVISOR REVIEW

PROVIDE REASON WHY YOU DISAGREE WITH STAFF RESPONSE AND FORWARD TO RESPONDENT'S SUPERVISOR IN PERSON OR BY US MAIL. KEEP FINAL CANARY COPY.

| SIGNATURE: | DATE SUBMITTED: |
|---|---|
| | |

## SECTION D: SUPERVISOR'S REVIEW

| RECEIVED BY SUPERVISOR (NAME): | DATE: | SIGNATURE: | DATE RETURNED: |
|---|---|---|---|
| | | | |

# EXHIBIT C

## 119 Outgoing Legal Mail by CDC Number

| Date | Name | CDC# | Addressee | City, State Zip Code |
|---|---|---|---|---|
| 3/17/2020 | WISEMAN | K65722 | RBCG LLP | SAN FRAN CA 94104 |
| 3/26/2020 | WISEMAN | K65722 | OFC OF ATTY GEN XAVIER BECERRA | SAN FRAN CA 94102 |
| 3/27/2020 | WISEMAN | K65722 | OIG PREA OMBUDSMAN | SAC CA 95827 |
| 3/27/2020 | WISEMAN | K65722 | OFC OF INTERNAL AFFAIRS | SAC CA 95812 |
| 3/30/2020 | WISEMAN | K65722 | CSP CORCORAN ATTN WARDEN | CORCORAN CA 93212 |
| 4/2/2020 | WISEMAN | K65722 | PRISON LAW OFC SPECTER ATTY | SQ CA 94964 |
| 4/15/2020 | WISEMAN | K65722 | RBGG LLP BIEN ATTY | SAN FRAN CA 94104 |
| 4/17/2020 | WISEMAN | K65722 | RBGG LP BIEN ATTY | SAN FRAN CA 94104 |
| 5/4/2020 | WISEMAN | K65722 | CHIEF IM APPEALS CDCR | SAC CA 94283 |
| 5/4/2020 | WISEMAN | K65722 | OFC OF SEC OF STATE STATE OF CA | SAC CA 95814 |
| 5/22/2020 | WISEMAN | K65722 | RBGG LLP BIEN ATTY | SAN FRAN CA 94104 |
| 5/26/2020 | WISEMAN | K65722 | RBGG LLP BIEN ATTY | SAN FRAN CA 94104 |
| 7/1/2020 | WISEMAN | K65722 | RBGG LLP BIEN ATTY | SAN FRAN CA 94104 |
| 7/2/2020 | WISEMAN | K65722 | CDCR CHIEF IM APPEALS | SAC CA 94283 |
| 8/19/2020 | WISEMAN | K65722 | RBGG LLP BIEN ATTY | SAN FRAN CA 94104 |
| 9/18/2020 | WISEMAN | K65722 | CDCR CHIEF IM APPEALS OFC | SAC CA 95811 |

| Date | Name | CDC# | Addressee | City, State Zip Code |
|---|---|---|---|---|
| 10/5/2020 | WISEMAN | K65722 | HCC APPEALS BRANCH | ELK GROVE CA 95758 |
| 11/19/2020 | WISEMAN | K65722 | OFC OF OMBUDSMAN | SAC CA 94283 |
| 11/19/2020 | WISEMAN | K65722 | CHIEF IM APPEALS BRANCH CDCR | SAC CA 94286 |
| 12/9/2020 | WISEMAN | K65722 | ROSEN BIEN GALVAN & GRUNFELD LLP | SAN FRAN, CA 94104 |
| 12/9/2020 | WISEMAN | K65722 | ROSEN BIEN GALVAN & GRUNFELD LLP | SAN FRAN, CA 94104 |
| 12/14/2020 | WISEMAN | K65722 | CHIEF IM APPEALS | SAC CA 95811 |

# 119 Incoming Legal Mail by CDC Number

| Date | Name | CDC# | Addressee | Yard: | Housing: |
|---|---|---|---|---|---|
| 4/14/2020 | WISEMAN | K65722 | CDCR OFC OF OMBUDSMAN SAC CA | C2 | 141 L |
| 4/14/2020 | WISEMAN | K65722 | RBGG LLP BIEN ATTY SAN FRAN CA | C2 | 141 L |
| 4/20/2020 | WISEMAN | K65722 | PRISON LAW OFC SPECTER ATTY SQ CA | C2 | 141 L |
| 5/28/2020 | WISEMAN | K65722 | ST OF CA OFC INSP GEN SAC CA | C2 | 141 L |
| 6/11/2020 | WISEMAN | K65722 | PRISON LAW OFC SPECTER ATTY SQ CA | C2 | 141 L |
| 6/16/2020 | WISEMAN | K65722 | RBGG LLP BIEN ATTY SAN FRAN CA | C2 | 141 L |
| 6/30/2020 | WISEMAN | K65722 | RBGG LLP BIEN ATTY SAN FRAN CA | C2 | 141 L |
| 10/6/2020 | WISEMAN | K65722 | RBGG LLP BIEN ATTY SAN FRAN CA | C2 | 141 L |

# EXHIBIT 1



STATE *of* CALIFORNIA

**OIG** | OFFICE *of the*
INSPECTOR GENERAL

Roy W. Wesley, *Inspector General*
Bryan B. Beyer, *Chief Deputy Inspector General*

Independent Prison Oversight

*Regional Offices*

Sacramento
Bakersfield
Rancho Cucamonga

May 19, 2020

Chester Wiseman, K65722
California State Prison, Los Angeles County
Facility C
P.O. Box 4610
Lancaster, CA  93539-4610

Dear Chester Wiseman:

The Office of the Inspector General (OIG) received your correspondence on March 30, 2020. In your correspondence, you allege on March 4, 2020, while being escorted to your assigned cell in handcuffs, officers at California State Prison, Los Angeles County (LAC) utilized unreasonable force on you and then failed to initiate a use of force incident report when one was required.

The OIG reviewed California Department of Corrections and Rehabilitation (CDCR) institutional records and found that you have filed a 602 staff complaint appeal regarding these issues. Records show that you submitted appeal log number LAC-C-20-01495 to the Inmate Appeals Office (IAO) on March 14, 2020; the IAO accepted your appeal for processing on March 19, 2020. As part of the inquiry, department staff interviewed you on April 2, 2020, and you received a staff complaint response dated April 29, 2020, with a determination that staff did not violate CDCR policies regarding your allegation. The OIG's review of appeal log number LAC-C-20-01495 did not identify any issues regarding staff misconduct. Thus, we have determined that no further intervention is warranted by our office at this time.

We recommend you continue the administrative grievance process until you have received a final decision by the CDCR's third level of review. If you receive a response by the third level of review and believe the department failed to appropriately address your concerns, you may choose to submit your complaint to our office and include the reasons why the department's response was inappropriate. In these instances, please also include copies of supporting documents, such as your submitted CDCR Form 602 appeal and CDCR response. Finally, do not send us originals as we will not be able to return them.

The OIG is an independent State of California government agency established by law. Our primary responsibility is the independent oversight of California's youth and adult correctional agencies, including the CDCR, the Board of Parole Hearings, and the Prison Industry Authority.

*Gavin Newsom, Governor*



10111 Old Placerville Road, Suite 110
Sacramento, California 95827
Telephone: (916) 255-1102
**www.oig.ca.gov**



STATE *of* CALIFORNIA

**OIG** | OFFICE *of the*
INSPECTOR GENERAL

*Roy W. Wesley, Inspector General*
*Bryan B. Beyer, Chief Deputy Inspector General*

Independent Prison Oversight

*Regional Offices*

*Sacramento*
*Bakersfield*
*Rancho Cucamonga*

As part of our statutory mandates, the OIG oversees the internal affairs investigations
and employee disciplinary process of the CDCR, monitors CDCR's use-of-force
review process, and conducts reviews of the department's policies, practices, and procedures. The
OIG is not an investigative agency and does not provide legal advice or pursue legal actions on
behalf of inmates.

Thank you for bringing your concerns to our attention. The OIG considers this matter closed.


INTAKE AND REVIEW UNIT
Office of the Inspector General

BW: 20-0033023-PI



10111 Old Placerville Road, Suite 110
Sacramento, California 95827
Telephone: (916) 255-1102
www.oig.ca.gov

STATE OF CALIFORNIA—DEPARTMENT OF CORRECTIONS AND REHABILITATION                                    GALVIN NEWSOM, GOVERNOR

**DIVISION OF ADULT INSTITUTIONS**
CALIFORNIA STATE PRISON-LOS ANGELES COUNTY
44750 60TH Street West
Lancaster, CA 93536



August 26, 2019


Mr. Chester Wiseman, CDC #K65722
Facility C, Building 2, Cell-141L
California State Prison–Los Angeles County
P. O. Box 4610
Lancaster, CA  93539-4610

Dear Mr. Wiseman:

This is in response to your letter dated March 26, 2020, addressed to the Office of Internal
Affairs and forwarded to this office for response.  In your letter, you state staff at the California
State Prison–Los Angeles County is participating in acts of misconduct and not following proper
policies and procedures.

Your concerns have been noted.  All allegations of staff misconduct are reviewed in accordance
with Departmental Policies and Procedures.

Mr. Wiseman, as stated to you in a previous letter, in the event staff are conducting themselves
unprofessionally and/or participating in acts of misconduct, the inmate appeals/grievance
system is the right venue to address your issues.

If you are currently using the appeal system to rectify your issues, you are instructed to
continue the process until such time you are satisfied with the decision or have exhausted the
appeal within the Department.  Any additional response to this letter would be a violation of
your due process rights that are provided for in the appeal/grievance system.

CDCR's policy is all inmates have a right to be treated respectfully, impartially, and fairly by all
employees. Furthermore, CDCR does not promote irresponsible or unethical conduct, or
conduct reflecting discredit upon himself or herself or the Department.

I hope this letter has been of assistance to you.

Sincerely,

M. WOFFORD
Associate Warden
Programs and Housing C&D
California State Prison – Los Angeles County



